

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| Charles Austin<br>Assistant United States Attorney<br>Charles.Austin@usdoj.gov<br>MDB 6.25.21 | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4989*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0717* |

USDC- BALTIMORE
'22 APR 20 PM 12:38

April 11, 2022

Creston P. Smith, Esq.
Silverman/Thompson/Slutkin/White, LLC
201 N. Charles Street
26th Floor
Baltimore, MD 21201

    Re:    <u>United States of America v. Kevin Toppin,</u>
               Crim. No. JKB-20-0443 (D. Md.)

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, Kevin Toppin (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have Mr. Toppin execute it in the spaces provided below. If this offer has not been accepted by April 18, 2022, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

      1.    The Defendant agrees to plead guilty to Counts One and Two of the Superseding Information filed against him, which charges him with conspiracy to distribute a quantity of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 846 (Count One); and possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841 (Count Two). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that on or about the time alleged in the Superseding Information, in the District of Maryland:

           a.    Count One:

                i. An agreement existed between two or more persons to distribute and possess with the intent to distribute N-phenyl-N-[1-(2-phenyl-ethyl)-4-

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

        piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, and

    ii. The defendant knowingly and voluntarily joined in that agreement.

  b. Count Two:

    i. The defendant knowingly, willfully, and unlawfully possessed a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenyl-ethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, and

    ii. The defendant possessed the substance or mixture with the intent to distribute it.

## Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | N/A | 20 years | 3y min., life max | $1,000,000 | $100 |
| 2 | 21 U.S.C. § 841 | N/A | 20 years | 3y min., life max | $1,000,000 | $100 |

  a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

   e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

Rev. August 2018

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

    d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

  5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a. This Office and the Defendant further agree that guidelines to the base offense level are as follows:

        i. **Count One**: The parties agree that the base offense level is 32, pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(c)(4), because of the quantity of fentanyl foreseeable to the defendant as part of the conspiracy.

        ii. **Count Two**: The parties agree that the base offense level is 30 pursuant to U.S.S.G. § 2D1.1(c)(5) because of the fentanyl weight attributed under this count is at least 400 grams but less than 1.2 kilograms.

        iii. With respect to multiple counts of conviction, Counts One and Two group for the purpose of calculating the base offense level, pursuant to U.S.S.G. §§ 3D1.2(d), 3D1.3. The grouped offense level is, therefore, **32**.

    b. The Defendant reserves the right to argue that a reduction in the offense level of up to **four (4) levels** is appropriate, pursuant to U.S.S.G. § 3B1.2, based on the Defendant's role in the offense. This Office reserves the right to oppose any such reduction.

    c. The Defendant reserves the right to seek an adjustment pursuant to U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). If the Defendant satisfies all of the conditions set forth in those provisions, the Court may reduce the offense level by **two (2) levels**. The government reserves the right to oppose an adjustment under the same provisions, on the grounds that the Defendant has failed to satisfy each and all of their requirements.

    d. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    e.    Based on the foregoing, the **anticipated adjusted offense level** is as high as **29** and as low as ~~25~~ (23) [handwritten] JB CA CPS KT

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offenses were a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

9.    The parties reserve the right to, at the time of sentencing, advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), this Office agrees to recommend a concurrent sentence no greater than 60 months' imprisonment. The parties reserve the right to bring to the Courts' attention all information with respect to the Defendant's background, character, and conduct that the parties deem relevant to sentencing.

10.    At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

11.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

        b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

                i.    The Defendant reserves the right to appeal the sentence of imprisonment exceeding the statutory maximum.

        c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

        12.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

        13.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

        14.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

        15.      The Defendant agrees to assist fully in any forfeiture of the above-described property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or

Rev. August 2018

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20.   This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Charles Austin
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4/18/22
_____              _____
Date                                                           Kevin Toppin

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the

Rev. August 2018

9

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_4/18/22_                  _C.P. Smith_
Date                                  Creston P. Smith, Esq.

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Beginning no later than November 2019, the defendant, Kevin Toppin, agreed to and participated in a conspiracy to distribute and possess with intent to distribute controlled substances, including fentanyl, in Baltimore, Maryland. At times during this conspiracy, Mr. Toppin possessed controlled substances with the intent to distribute the same.

In 2019, investigators from Drug Enforcement Administration (DEA) Strike Force Group 1 (SF1) initiated an investigation into the area surrounding the intersection of Pennsylvania and North avenues in Baltimore City. During the investigation, agents identified Mr. Toppin as associated with a drug trafficking organization (DTO) known as or associated with the moniker "Master P." Beginning in November 2019, pursuant to various court orders, investigators began intercepting electronic and wire communications of various individuals associated with the Master P DTO.

Some of these interceptions included communications involving or about Mr. Toppin, including communications between co-conspirators (CC1 and CC2) arranging what investigators interpreted to be meetings or exchanges regarding controlled substances or proceeds of narcotics transactions. At some of the meetings that followed those messages, Mr. Toppin was observed meeting in person with CC2. For example, shortly after CC1 and CC2 exchanged text messages, CC2 arrived in the 2100 block of North Smallwood Street in Baltimore. About twenty minutes after CC2's arrival, Mr. Toppin arrived in the same block. Investigators then observed Mr. Toppin get into CC2's vehicle, exit CC2's vehicle with a bag in his hand, and place the bag in the trunk of his own vehicle. Investigators concluded that Mr. Toppin was present at the meeting on behalf of CC1 and that CC2 was providing payment for narcotics provided on consignment.

On April 5, 2020, federal agents intercepted a meeting between Mr. Toppin and CC2 and, in the process, seized approximately 1.2 kilograms of fentanyl. On that date, CC1 and CC2 exchanged text messages arranging a meeting. CC2 then left his residence and arrived in the 2100 block of Smallwood Street, an area where he and Mr. Toppin met on previous occasions. Mr. Toppin's Acura sedan was in the same area. CC2 parked his vehicle and entered the Acura. Less than thirty minutes after obtaining search warrants for Mr. Toppin, his vehicle, and CC2, federal agents responded to the scene immediately and ordered the men out of the Acura. CC2 volunteered, "you ain't got to search me, it's right here" while pushing his hips forward. Agents retrieved a kilogram of packaged and wrapped fentanyl from CC2's pants. Agents also recovered

USA v. Kevin Toppin
JKB-20-0443
Plea Letter

from the Acura two plastic bags holding 976 pills, as well as approximately $6,000 in U.S. currency inside a jacket in the back seat. From Mr. Toppin's person, agents recovered more than $1,211 in U.S. currency. After federal agents left the scene, Mr. Toppin and CC2, separately, sent to CC1 text messages requesting an immediate meeting. Mr. Toppin agrees that he possessed the seized narcotics with the intent to distribute them. Subsequent lab analysis indicated that the 976 pills from Mr. Toppin's Acura contained a mix of fentanyl and quinine weighing approximately 195 grams.

In November 2019 and December 2019, investigators conducted controlled purchases from co-conspirators who either advertised their narcotics as being "Master P" or were intercepted discussing drug trafficking with CC2. Chemical analysis of these purchases identified the presence of fentanyl.

Throughout the course of his involvement, it was reasonably foreseeable to Mr. Toppin, and within the scope of the conspiracy, that he or co-conspirators would distribute or possess with the intent to distribute at least 1.2 kilograms but less than 4 kilograms of a mixture or substance containing fentanyl during the course and in furtherance of the conspiracy.

Mr. Toppin agrees that he participated in the activities of the conspiracy, including those identified above, in the District of Maryland.

The government's evidence of the above includes wire and electronic interceptions; audio and video recordings; downloads of cellular telephones; forensic reports and analysis; and witness testimony.

SO STIPULATED:

_____
Charles Austin
Assistant United States Attorney

_____
Kevin Toppin
Defendant

_____
Creston P. Smith, Esq.
Counsel for Defendant