IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. JKB-20-0443** |
| | * | |
| **LAFONTE JOHNSON,** | * | |
| | * | |
| Defendant. | * | |
| ********** | | |

## UNITED STATES' SENTENCING MEMORADNUM

Throughout several months in 2019 and 2020, the "Master P" drug trafficking organization sold fentanyl in the Penn North neighborhood of Baltimore. Defendant Lafonte Johnson supplied Master P's drug dealers with more than a kilogram of fentanyl and made hundreds of thousands of dollars doing so. On September 1, 2023, Johnson pleaded guilty to Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). He will be sentenced by the Court on January 5, 2024, at 11:00 AM.

As a just consequence for Johnson's actions, the Government asks the Court to sentence Johnson to a term of no more than 60-months' imprisonment and a $31,420.00 fine. Such sentence reflects the seriousness of the Defendant's conduct and his leadership role in the overall conspiracy, and would further minimize his profit from distributing deadly controlled substances.

## RELEVANT FACTUAL BACKGROUND

In the fall and winter of 2019, police in Baltimore purchased fentanyl numerous times from sellers affiliated with the "Master P" trafficking organization. Over weeks of investigation, an organizational hierarchy emerged. Co-defendant Albert Shields was the man on the street. He counted out pills that he sold to customers as he stood on a cold city sidewalk in the 2400 block of Francis Street. Co-defendant Michael Bowels helped managed the stash house by collecting

money and doling out pills to dealers, like Shields, on the street. Bowels lived right next door to the stash and was intercepted over wiretapped calls telling Shields where to meet when Shields ran out of drugs or had money to send up.

Co-defendant Torico Reaves was the top man of the street crew – he brought the drugs to the stash house after picking them up from Johnson's courier, co-defendant Kevin Toppin. Above the street dealers, directing Reaves and Toppin's meetings, was Lafonte Johnson.

Johnson coordinated meetings between his courier and Torico Reaves to deliver fentanyl, and then later meetings directly between himself and Reaves to collect the profits. Unlike the street dealers discussing sales direct to the users, Johnson only texted – he did not broadcast his voice on calls to Reaves. Johnson and Reaves used coded language – referring to drug drop-offs as "workouts" and meeting up with a "trainer." Until his arrest, Johnson's acumen appeared to be paying off. His elevated role as the organization's supplier permitted Johnson to rake in thousands of dollars in illegal profits and live a comfortable life in Anne Arundel County – far from the dangerous Baltimore streets where other, lesser members of Master P sold his pills.

A few examples here. On January 18, 2020, Reaves and Johnson exchanged approximately forty text messages. Shortly thereafter, Reaves drove from the stash house area – the 2400 block of Francis Street – to the 2100 block of N. Smallwood Street in Baltimore, where he met Toppin to acquire drugs.

On February 10, 2020, Reaves and Johnson texted to arrange a meeting for a drug resupply. Later that same day, Reaves drove from the 2400 block of Francis Street to the same N. Smallwood Street intersection where he met with Toppin to acquire drugs before again returning to the 2400 block of Francis Street – the stash house location.

The next day, February 11, 2020, Johnson and Reeves arranged to meet again. Except this

time, Johnson personally collected from Reeves. Intercepted text messages show Reaves told Johnson he was at "Mom" – no other detail – Johnson acknowledged and then confirmed he made it there.



Within minutes of Johnson parking on Etting Street – where Reaves' mother lives – Reeves' van drove up and a bag was handed out the passenger window (indicated by the green arrow in below video screenshot). The Government believes this was the payoff for the prior day's drug delivery.



3

On March 13, 2020, wiretaps captured another set of texts between Reaves and Johnson, and surveillance witnessed another meeting between Reaves and Toppin. A few days later, on March 18, 2020, Reaves and Johnson again arranged to meet. That evening, Johnson drove to the Francis Street stash house. Within seconds of Johnson arriving in his Jeep, Reaves walked out, opened the rear door, and placed a bag inside.



These are a few in the series of meetings that follow the pattern of Johnson arranging to supply Reaves with drugs, sending a courier to deliver, and then personally meeting with Reaves afterwards to collect his money.

On April 5, 2020, agents intercepted a meeting between Reaves and Toppin, which Johnson had coordinated. Agents seized approximately 1.2 kilograms of fentanyl from Reaves' pants. After law enforcement left the scene, Reaves and Toppin both messaged Johnson to request an immediate meeting. Pings from Johnson's phone and vehicle and Reaves' vehicle showed that the two met for several minutes shortly after.

On April 14, 2020, investigators executed a search warrant at Johnson's residence on Pine Springs Drive. Concealed in the hidden compartment of a hydraulically activated coffee table, agents found $814,270 in cash.



## SENTENCING GUIDELINES CALCULATION

The sentencing guideline calculation set forth in the presentence report is accurate. Johnson's total offense level is 27, and his guideline range is 70 to 87 months. The presentence report noted – without objection from the defense – that it appears Johnson has the ability to pay a fine in this case. The fine range for this offense is $25,000 to $1,000,000.

## 3553(a) ANALYSIS

Lafonte Johnson comes to the Court from vastly more fortunate circumstances than many other drug defendants. He has a close relationship with his father and was close with his mother. He grew up free from abuse or neglect, his needs always being met. Johnson was a standout

5

basketball player at a private high school and went on to play Division 1 ball at George Washington.  Johnson was not an addict who needed to sell drugs.  He was not a man trapped into poverty on the streets who might argue he saw few options other the drug game.  Johnson purported to be a legitimate businessman and a youth mentor; he was a chameleon hiding his criminal activity in plain sight.

The defendant supplied over a kilogram of fentanyl to the streets of Baltimore and made hundreds of thousands of dollars from the suffering and addiction of others less fortunate. Throughout this, Lafonte Johnson floated above it all.  He lived in a beautiful suburban home, drove nice vehicles, and even after his guilty plea still travels in a social stratum to attend gatherings for Maryland's political elite.




*Johnson's home in Severn*         *Attending Gov. Moore's 2023 Birthday Celebration*

Lafonte Johnson didn't traffic drugs because of addiction, abuse, or financial need. He did it to get rich and support his affluent lifestyle.  Perhaps that is what makes Johnson's conduct more pernicious than his codefendants' – he made the decision to traffic fentanyl purely out of

greed.  He could have used his talents for good, but he instead chose to flood Baltimore with a poison responsible for so much death and destruction.  The Court should not refrain from imprisoning Johnson because he supposedly mentored youth and built community by day.  By night, Johnson engaged in and richly profited from the very drug trade that plagues those same young people and tears at the community's fabric.  Sentencing Johnson to a term of 60 months imprisonment reflects the serious nature of his offense and demonstrates that no amount of connections or privilege can place someone above the consequences their decision to traffic fentanyl.

     A term of imprisonment also ensures there is no unwarranted sentencing disparity among similarly situated defendants in this case.  Here, nearly every other codefendant received a prison sentence of at least 36 months.  The Court sentenced Johnson's courier, Kevin Toppin, to 42-months imprisonment.  Like Johnson, Toppin also had no criminal history points.  The highest sentence meted out by this Court so far in this case was 64 months to Torico Reaves.  Reaves had a more significant criminal past, but it had fallen off the range for criminal history calculation and he too had zero criminal history points.  The only outlier sentence went to low-level dealer Michael Bowels – who the Court sentenced to time served.   The Government submits that Bowles, a street dealer with a lifelong heroin addiction, was a far different type of defendant than Lafonte Johnson.

     Attached as a sealed exhibit is a summary of Johnson's main financial account.  This summary chart depicts the wire inflows and outflows from Johnson's outward facing business – RBJ Properties.  It also shows the thousands of dollars of cash that Johnson deposited into this account every month – until he was caught in this case and the Government seized his $814,270 in hidden cash.  Then the cash deposits suddenly stopped.  The Government submits to the Court

that these cash deposits reflect illicit proceeds and asks that the court fine Lafonte Johnson the full amount that he deposited during the time period he has admitted to drug trafficking.

## **CONCLUSION**

For all of the foregoing reasons, the government asks the Court to sentence Johnson to no more than 60 months in the custody of the Bureau of Prisons, followed by a three-year term of supervised release, and a $31,420.00 fine.

Respectfully submitted,

EREK L. BARRON
United States Attorney

By: _____
Robert I. Goldaris
Adeyemi Adenrele
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2023, I caused a copy of the foregoing Memorandum to be served on defense counsel through the electronic case filing system.

/s/
Robert I. Goldaris
Assistant United States Attorney